# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Arena Development Group, LLC,
a California limited liability company;
and Ice Station Valencia, LLC, a
California limited liability company,

                Plaintiffs,

      v.

Naegele Communications, Inc, a
Minnesota Corporation; Robert O.
Naegele, Jr., a/k/a Robert Naegele, Jr.,
a/k/a R.O. Naegele, Jr., a/k/a R. Naegele,
Jr., a/k/a O. Naegele, Jr., a/k/a Bob Naegele,
Jr., a/k/a Robert O. Naegele, a/k/a Robert
Naegele, a/k/a R.O. Naegele, a/k/a R.
Naegele, a/k/a O. Naegele, a/k/a Bob
Naegele, an individual; Premier Rinks, Inc.,
f/k/a Premier Rinks, LLC, a Minnesota
limited liability company; RNDB, Inc., d/b/a
BNDB, Inc., f/k/a Athletica, Inc., d/b/a
Crystaplex Ice Rink Systems, f/k/a In-Line
Sports Systems, Inc., d/b/a Border Patrol, a
Minnesota Corporation; Robert O. Naegele
III, a/k/a Robert Naegele III, a/k/a R.O.
Naegele III, a/k/a R. Naegele III, a/k/a O.
Naegele III, a/k/a Bob Naegele III, a/k/a
Robert O. Naegele, a/k/a Robert Naegele,
a/k/a R.O. Naegele, a/k/a R. Naegele, a/k/a
O. Naegele, a/k/a Bob Naegele, an individual;
and David B. Battel, a/k/a David Battel, a/k/a
D. B. Battel, a/k/a D. Battel, a/k/a B. Battel,
an individual,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 06-2806 ADM/FLN

---

Franklin R. Fraley, Jr., Esq., Fraley & Associates, Los Angeles, CA, and Joseph L. Steinfeld, Jr.,
Esq., ASK Financial LLP, Eagan, MN, on behalf of Plaintiffs.

Gordon H. Hansmeier, Esq. and Kristi D. Stanislawski, Esq., Rajkowski Hansmeier Ltd., St.
Cloud, MN, on behalf of Defendants RNDB, Inc., Robert O. Naegele III, and David B. Battel.

---

# I.  INTRODUCTION

On February 6, 2008, the undersigned United States District Judge heard oral argument on Defendants RNDB, Inc. ("Athletica"), Robert O. Naegele III ("Naegele III"), and David B. Battel's ("Battel") (collectively, the "Athletica Defendants") Motion for Judgment on the Pleadings [Docket No. 79].  In their Second Amended Complaint [Docket No. 43], Plaintiffs Arena Development Group, LLC ("Arena") and Ice Station Valencia, LLC ("Ice Station") (collectively "Plaintiffs") assert claims for declaratory relief for recharacterization of debt as equity and equitable subordination, four claims of fraudulent transfer, claims for conversion, enforcement of judgment, unjust enrichment, and breach of fiduciary duty.  For the reasons set forth herein, the Athletica Defendants' Motion for Judgment on the Pleadings is granted in part and denied in part.

# II.  BACKGROUND[1]

In 1993, Naegele III founded In-Line Sports Systems, Inc., using the trade name Border Patrol.  2d Am. Compl. ¶ 12.  Border Patrol's name was changed to Athletica in 1998.  Id. ¶ 57.  Throughout Athletica's existence, Naegele III was a shareholder, chairman of the board of directors, a director, and an officer of Athletica.  Id. ¶ 14.  Battel was also a shareholder, director, and officer of Athletica.  Id. ¶ 33.  Athletica manufactured and distributed ice rinks, equipment, and accessories for ice arenas.  Id. ¶¶ 56, 161.  Athletica also sold and installed flooring for use in off-ice areas of ice rinks.  Id.

---

[1]  The facts set forth in the Court's background section are much the same as those set forth in the Court's previous Order [Docket No. 70] ruling on the Non-Athletica Defendants' Motion to Dismiss [Docket No. 47].

Plaintiffs aver that from its inception, Naegele III failed to adequately capitalize Athletica.  Id. ¶ 17.  From 1998 through 2002, Athletica had an uninterrupted pattern of annual net losses.  Id. ¶ 18.  Plaintiffs allege that as of 1998, Athletica was "Bankruptcy Insolvent," meaning that the sum of Athletica's debts was greater than the sum of Athletica's assets at fair valuation.  Id. ¶ 21.  Plaintiffs further allege that as of 1998, Athletica was completely dependent on capital infusions to continue to operate and therefore was not a going concern.  Id. ¶ 23.  Plaintiffs also allege that as of 1999, Athletica became "Balance Sheet Insolvent," meaning that the sum of Athletica's debts was greater than the sum of Athletica's assets at book value.  Id. ¶ 27.  Athletica continued to be Bankruptcy Insolvent, Balance Sheet Insolvent, and not a going concern, through 2001.  Id. ¶¶ 90-92, 123-25.

On January 5, 1999, Naegele Communications Inc. ("NCI"), a privately held corporation engaged in the management of investments for the Naegele family, entered into a "Revolving Credit Agreement" with Athletica.  Id. ¶¶ 66-67.  Robert O. Naegele Jr. ("Naegele Jr.") is the chairman of the board of directors of NCI and holds a controlling equity interest in NCI.  Id. ¶¶ 40-41.  Pursuant to the Agreement, NCI loaned Athletica $2,000,000, and Athletica gave NCI a security interest in substantially all of its assets.  Id.  The terms of the Revolving Credit Agreement provided that Athletica's insolvency would be an automatic default on the loan.  Id. ¶ 70.  Plaintiffs aver that Naegele Jr., Naegele III, Battel, Athletica, and NCI all knew or should have known that Athletica was Bankruptcy Insolvent and almost Balance Sheet Insolvent at the time of the loan.  Id. ¶¶ 69, 71-72.  Athletica was immediately and automatically in default on the loan.  Id. ¶ 73.

On October 20, 1999, NCI and Athletica amended the Revolving Credit Agreement to increase the principal amount of the loan by $300,000.  Id. ¶ 97.  On April 1, 2001, NCI and Athletica again amended the Revolving Credit Agreement to increase the principal amount of the loan by an additional $1,675,000, raising the total principal amount of the loan to $3,975,000. Id. ¶ 133.  Athletica continued to be in automatic default on the loan during the first and second amendments to the loan.  Id. ¶¶ 102, 138.  Athletica made no payments of principal or interest on the loan.  Id. ¶¶ 89, 122, 158-59.  Plaintiffs allege that due to Athletica's default on the loan, the first and second amendments never took effect and were never secured against Athletica's assets. Id. ¶¶ 106-07, 142-43.

Plaintiffs allege that NCI did not expect Athletica to repay the loans unless and until Athletica generated a net profit.  Id. ¶¶ 77, 111, 147.  Plaintiffs further allege that Naegele III, Naegele Jr., Battel, NCI, and Athletica had no legitimate business purpose for the loans, but the loans provided Athletica with cash enabling Athletica to appear to its customers to be a solvent business.  Id. ¶¶ 81, 115, 151.  Plaintiffs allege that NCI never intended to enforce the terms of the loans unless and until a creditor sought to satisfy claims against Athletica.  Id. ¶¶ 86, 120, 156.

In 2000, Arena was constructing an ice skating and family entertainment facility in Valencia, California, for Ice Station.  Id. ¶ 164.  On June 30, 2000, Arena entered into a contract with Athletica to supply and install the flooring in the Ice Station facility for $216,733 .  Id. ¶ 167.  Arena paid $171,193.93 to Athletica on the flooring contract before Athletica breached the contract.  Id. ¶¶ 174-75.  In 2004, an arbitrator awarded Arena $1,000,652.20 in damages, attorneys' fees, expenses, and costs.  Id. ¶ 176.  In February 2006, a California state court

entered judgment in favor of Arena and against Athletica on the arbitration award in the amount of $1,214,394.98, and in favor of Ice Station and against Athletica on default prove-up in the amount of $587,118.03.  Id. ¶ 177.

Plaintiffs allege that in March 2004 Naegele III and Battel, on behalf of Athletica, threatened Jerrold Fine, the manager of Arena, that NCI would foreclose the loan on substantially all of Athletica's assets if Arena tried to collect the arbitration award, leaving Athletica with no means to pay its creditors.  Id. ¶¶ 163, 179.  In April 2004, NCI formed Premier and transferred the Athletica loan to Premier.  Id. ¶¶ 180-81.  On April 30, 2004, Premier foreclosed on substantially all of Athletica's assets based on NCI's security interest under the loan.  Id. ¶ 182.  After the foreclosure, Premier operated Athletica's business as Athletica.  Id. ¶ 183.  Plaintiffs allege that NCI never required Athletica to comply with any of the terms of the loan prior to the foreclosure, and that NCI used the foreclosure as a collusive device to enable Athletica to continue to operate but avoid paying the arbitration award and judgment.  Id. ¶¶ 184-85.

## III.  DISCUSSION

### A.    Motion to Dismiss Standard

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870,

879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880.

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

**B.      Recharacterizing Debt as Equity and Equitable Subordination**

In the Court's previous Order addressing the Non-Athletica Defendants' Motion to Dismiss, the Court dismissed Plaintiffs' claims for declaratory relief for recharacterization of debt to equity and equitable subordination. Order at 13. "Declaratory relief for recharacterization of debt to equity and equitable subordination are not cognizable causes of action in federal district court." Id.

The Athletica Defendants assert that because Plaintiffs' claims for recharacterization of debt to equity and equitable subordination are not causes of action in federal district court but rather are remedies within the jurisdiction of bankruptcy courts, the Court should follow the same course and dismiss these claims against the Athletica Defendants. Plaintiffs contend that the Court erred in dismissing these claims against the Non-Athletica Defendants and assert that Minnesota law recognizes declaratory relief claims for recharacterization of debt to equity and equitable subordination. Given that the Court's basis for jurisdiction is the diversity of the parties, Plaintiffs' argue the Athletica Defendants' Motion to Dismiss should be denied.

The issue is not whether Minnesota law recognizes claims for declaratory relief but whether this Court, as a federal district court, has the authority to recharacterize debt. In the

prior Order, the Court found it does not.  Accordingly, Plaintiffs' claims for declaratory relief for recharacterization of debt to equity and equitable subordination are dismissed.

**C.      Conversion**

In the previous Order, the Court also dismissed Plaintiffs' conversion claim against the Non-Athletica Defendants.  The Court concluded that Plaintiffs could not succeed on their conversion claim against the Non-Athletica Defendants because "NCI took a security interest in Athletica's assets in January 1999 but Plaintiffs did not obtain a judgment against Athletica until 2006, meaning NCI has a superior right to Athletica's assets by the principle of first in time, first in right." Order at 18.  Plaintiffs argued that if they succeeded on their declaratory relief claims for recharacterization of debt to equity and equitable subordination, then they had a superior right to Athletica's assets making their conversion claim viable.  Finding that NCI had superior rights, and because Plaintiffs' declaratory relief claims were dismissed, this Court also dismissed Plaintiffs' conversion claim.

The Athletica Defendants assert that this Court should dismiss Plaintiffs' conversion claim against it for the same reasons it dismissed Plaintiffs' claims against the Non-Athletica Defendants.  Plaintiffs have failed to distinguish a difference between the Non-Athletica Defendants and the Athletica Defendants that supports a different conclusion than that reached in the previous Order.  Instead, Plaintiffs assert that if they "prevail on either their claims for declaratory relief (an issue that [Plaintiffs] believe the Court should reconsider) or their claims for fraudulent transfers, [Plaintiffs] would be entitled to perfect their interest in Athletica's assets and Premier's continued possession of those assets would be wrongful conversion." Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss [Docket No. 88].  This argument differs from the argument

7

presented in response to the Non-Athletica Defendants' Motion to Dismiss the conversion claim. Plaintiffs now assert not only that they should succeed on their conversion claim if they succeed on their claims for declaratory relief, but also that they should succeed on their conversion claim if they succeed on their claims of fraudulent transfer.

Having now dismissed the claims for declaratory relief, the issue becomes whether Plaintiffs may assert a conversion claim based on a claim of fraudulent transfer. Plaintiffs provide no explication of whether a conversion claim is made viable as a dependent claim on a claim of fraudulent transfer. Plaintiffs cite no authority for the proposition that a claim for conversion may be based on a successful claim of fraudulent transfer. Accordingly, the Court dismisses Plaintiffs' claim for conversion.

## D.      Enforcement of Judgment

Plaintiffs are seeking to enforce the California judgment against the Athletica Defendants. The Athletica Defendants argue for dismissal of this claim against Naegele III and Battel because they were not named parties in the underlying litigation. Plaintiffs assert that they do not seek to enforce the California judgment against Naegele III and Battel, rather, they seek to enforce the California judgment against Athletica's assets in the hands of Naegele III and Battel. Plaintiffs contend "[t]his is a classic in rem claim—a claim for the value of Athletica's assets that the Athletica Defendants stole—not an in personam claim with the opportunity to defend the merits of the underlying claim." Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 38.

Plaintiffs made the same argument in response to the Non-Athletica Defendants' Motion to Dismiss their enforcement of judgment claim. In ruling on that Motion, the Court explained:

> This claim is duplicative of other claims in Plaintiffs' Second Amended
> Complaint and Plaintiffs have provided no legal authority to support it as a
> separate ground for relief.  Plaintiffs may not enforce a judgment against the Non-
> Athletica Defendants to which the Non-Athletica Defendants were not parties.

Order at 18-19.  Plaintiffs have still not provided legal authority to support their argument that

they may enforce the California judgment against Naegele III and Battel in rem for the value of

Athletica's assets.  For the same reasons that Plaintiffs could not assert a claim to enforce the

California judgment against the Non-Athletica Defendants, they can not assert such a claim

against Naegele III and Battel, who were not parties to the California action.

**E.      Unjust Enrichment**

Plaintiffs alleged a claim of unjust enrichment against the Non-Athletica and Athletica

Defendants.  In the previous Order, the Court dismissed Plaintiffs' claim against the Non-

Athletica Defendants because the Minnesota Fraudulent Transfers Act ("MFTA")  provides

Plaintiffs with an adequate remedy at law and contains statutory standards for recovery.  For the

same reasons, the Athletica Defendants urge the Court to dismiss Plaintiffs' unjust enrichment

claim against them.  Plaintiffs argue, as they did in response to the Non-Athletica Defendants'

Motion to Dismiss, that they assert their unjust enrichment claim as an alternative theory to their

fraudulent transfer claims.  They also assert that because the MFTA contains a provision stating

that unless specifically displaced by the statute, principles of law and equity supplement the

provision of the MFTA, they may assert a claim of unjust enrichment to supplement and not

replace their MFTA claims.  Finally, Plaintiffs assert that the remedy they seek in their unjust

enrichment claim is distinct from the remedy they seek in their fraudulent transfer claims.

Plaintiffs seek to recover the profit Athletica derived by transferring its assets and "using those

assets in violation of [Plaintiffs'] rights," not merely the value of Athletica's assets.  Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 40.

Plaintiffs' arguments are an attempt to justify unjust enrichment as a separate claim rather than an alternative to their claim for fraudulent transfer.  The Court has ruled to the contrary.  "It is well settled in Minnesota that one may not seek a remedy in equity when there is an adequate remedy at law."  Southtown Plumbing, Inc. v. Har-Ned Lumber Co., 493 N.W.2d 137, 140 (Minn. Ct. App. 1992).  Plaintiffs' argument that the damages sought for unjust enrichment differ from the damages sought as relief for the fraudulent transfer claims is not supported in Plaintiffs' Second Amended Complaint.  To the contrary, Plaintiffs assert in their Second Amended Complaint that "[i]t would be inequitable and unjust for the Defendants, and each of them, to retain the use and benefit of *Athletica's assets* to the exclusion of Athletica's real creditors, including the Plaintiffs, and each of them."  2d Am. Compl. ¶ 263 (emphasis added).  Plaintiffs make no mention of recovery of a profit derived by the transfer of Athletica's assets in their Second Amended Complaint.  Any claim now seeking recovery of profit was not properly pled.  Plaintiffs' claim of unjust enrichment against the Athletica Defendants is dismissed.

**F.      Breach of Fiduciary Duty**

Plaintiffs assert the same allegations against Naegele III and Battel that they did against Naegele Jr.  Plaintiffs allege that Naegele III and Battel entered into a fiduciary relationship with Athletica's creditors because they were insiders who controlled the financial decisions of Athletica and because of Athletica's insolvency.  2d Am. Compl. ¶ 268.  Plaintiffs allege Naegele III and Battel owed fiduciary duties to Athletica's creditors, including duties of

disclosure, of preference, and to account, and that Naegele III and Battel breached their fiduciary duties to Plaintiffs by failing to disclose that Athletica was insolvent.  Id. at ¶¶ 269, 273.

The Court dismissed Plaintiffs' claim against Naegele Jr. stating: "A duty is imputed to individuals who are directors, shareholders, or officers, not merely 'insiders' as Plaintiffs have here alleged."  Order at 12.  Officers and directors of insolvent corporations do not generally owe fiduciary duties to creditors beyond the prohibition against self-dealing or preferential treatment.  Id. at 11.  Because Plaintiffs did not allege that Naegele Jr. engaged in preferential treatment or self-dealing at the expense of other creditors, and because there is no legally cognizable generalized fiduciary duty beyond the prohibition against self-dealing and preferential treatment, the Court held that Plaintiffs failed to make sufficient allegations to support a claim that Naegele Jr. breached a fiduciary duty.  Id. at 11-12.

Naegele III and Battel assert that the Court should dismiss Plaintiffs' claim of breach of fiduciary duty against them for the same reasons as applied to Naegele Jr.  Plaintiffs respond by asserting that "Naegele III/Battel preferred their own interests over arms length creditors by inducing [Plaintiffs] to enter into a transaction with Athletica that would benefit the Defendants, who had secretly separated Athletica's assets from Athletica."  Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 27.  Plaintiffs further assert that discovery conducted since they filed their Second Amended Complaint has provided them with information supporting that Naegele III and Battel used the fraudulent transfer for their own benefit and to the detriment of Plaintiffs by "preferentially canceling their debts."  Id.  Plaintiffs appear to request that they be allowed to amend their Complaint a third time: "to whatever extent [Plaintiffs] did not previously

11

adequately allege that Naegele III and Battel preferred their own personal interests over those of Athletica's creditors, [Plaintiffs] can do so now."  Id.

Plaintiffs' Second Amended Complaint makes the same allegations regarding Naegele Jr. as were made regarding Naegele III and Battel.  Accordingly, their claim suffers from the same deficiencies as the claim against Naegele Jr. and fails for the same reasons.  Although Naegele III and Battel, as shareholders, officers, and directors of Athletica, owe a duty to creditors, that duty does not extend beyond the prohibition against self-dealing or preferential treatment. Plaintiffs failed to allege any facts in their Second Amended Complaint demonstrating a plausible claim that Naegele III and Battel engaged in preferential treatment or self-dealing at the expense of other creditors.  To the extent Plaintiffs have since discovered facts that would support a claim that Naegele III and Battel breached their fiduciary duty, those facts were not pled in the Second Amended Complaint and Plaintiffs have not sought leave to amend their Complaint.  Because Plaintiffs failed to allege sufficient facts to demonstrate a plausible claim that Naegele III and Battel breached their fiduciary duty, Naegele III and Battel's Motion to Dismiss this claim is granted.

## G.    Fraudulent Transfer

In their Second Amended Complaint, Plaintiffs assert four claims of fraudulent transfer under the MFTA.  Plaintiffs assert various theories of liability against Naegele III and Battel as individuals and against Athetica.  Plaintiffs allege that NCI was the initial transferee of Athletica's assets and that Naegele Jr. and Premier are the subsequent transferees of Athletica's assets.  Plaintiffs allege that Naegele III and Battel are constructive transferees.

### 1.    Claims to hold Naegele III and Battel Personally Liable

12

Plaintiffs allege that they suffered damages because of Naegele III and Battel's wrongful acts and omissions in carrying out the fraudulent transfers, and that Naegele III and Battel are personally liable as "constructive trustees, co-conspirators, aiders, or abettors of a fraudulent transfer."  2d Am. Compl. ¶¶ 62, 206-208.

### a.      Agency and Tort Liability

The Athletica Defendants contend that Plaintiffs' claim that Naegele III and Battel are liable as agents of Athletica should be dismissed because Plaintiffs have not alleged that Naegele III and Battel acted outside of the scope of their authority as officers for Athletica.  Plaintiffs respond by asserting that as officers of Athletica, Naegele III and Battel are personally liable for their own tortious conduct and that fraudulent transfer is a tort.  The issue of whether fraudulent transfer is a tort was briefed in response to the Non-Athletica Defendants' Motion to Dismiss.  In that instance, however, the Court was not required to decide this legal issue because of Naegele Jr.'s alleged status as a mere insider.  Unlike Naegele Jr., Naegele III and Battel are corporate officers, directors, and shareholders of Athletica, and thus the Court must now reach the issue of whether fraudulent transfer is a tort.

The parties do not dispute that under Minnesota law corporate officers are liable for the torts they commit, but they do dispute whether fraudulent transfer is a tort.  In 1987, Minnesota adopted the MFTA, Minn. Stat. §§ 513.41-513.51, to repeal and replace the Uniform Fraudulent Conveyance Act.  The MFTA "provides remedies to creditors who are aggrieved by fraudulent transfers made by a debtor." Metro. Steel Fabricators, Inc. v. Michalski, 191 B.R. 150, 153 (Bankr. D. Minn. 1996).  "The purpose of the Fraudulent Transfer Act is to: 'prevent debtors from putting property which is available for the payment of their debts beyond the reach of their

creditors.'" Shields v. Goldetsky, 552 N.W.2d 226, 231 (Minn. 1996) (quoting Kummet v.

Thielen, 298 N.W. 245, 247 (1941)).  Under the MFTA:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
> whether the creditor's claim arose before or after the transfer was made or the
> obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2)
> without receiving a reasonably equivalent value in exchange for the transfer or
> obligation . . . .

Minn. Stat. § 513.44.  The MFTA provides that "to the extent a transfer is voidable in an action

by a creditor . . . the creditor may recover judgment for the value of the asset transferred . . .

against (1) the first transferee of the asset or the person for whose benefit the transfer was made;

or (2) any subsequent transferee other than a good-faith transferee who took for value or from

any subsequent transferee."  Minn. Stat. § 513.48.  Plaintiffs seek to hold non-transferee third

parties, Naegele III and Battel, personally liable.  Plaintiffs contend that Naegele III and Battel

are "constructive transferees," a term not used in the MFTA.

Because the plain language of the MFTA does not create a cause of action by which

Naegele III and Battel may be held personally liable, the dispositive question is whether the

common law rule holding officers, directors, and shareholders, liable for the torts they commit

may be applied to the MFTA.  Although other state courts and federal courts outside of this

district have been called on to determine whether fraudulent transfer is a tort and to determine

the application of this common law rule to the applicable state fraudulent transfers act, no court

has yet determined the applicability of this common law rule to the MFTA or whether fraudulent

transfer is considered a tort in Minnesota.

The Seventh Circuit in DFS Secured Healthcare Receivables Trust v. Caregivers Great

Lakes, Inc., 384 F.3d 338, 349 (7th Cir. 2004), addressed "whether an officer or director of a

first transferee under the [Indiana Uniform Fraudulent Transfers Act ("IUFTA")] who is found to have personally participated in the fraud can be held personally liable under Indiana law on that basis alone."  The Seventh Circuit noted that the question before it was one for which different states had reached different conclusions despite substantially similar statutory schemes.  Id. (citing Rohn & Haas Co. v. Capuano, 301 F. Supp. 2d 156, 160-61 (D.R.I. 2004)).  The court articulated the reasons why it believed that the common law rule at issue would apply to the IUFTA but ultimately certified the question to the Indiana Supreme Court.

Absent any guidance from any court within Minnesota, the best course of action is to certify this question to the Minnesota Supreme Court.  See Kaiser v. Mem'l Blood Ctr. of Minneapolis, Inc., 938 F.2d 90, 93-94 (8th Cir. 1991) ("In the absence of controlling precedent in the decisions of the Minnesota Supreme Court which would enable this court to reach a sound decision without indulging in speculation or conjecture, we believe the better practice is to seek a definitive resolution of th[is] state law question[] by the Minnesota Supreme Court."); Minn. Stat. § 480.065, subd. 3 (providing that a question may be certified to the Minnesota Supreme Court "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state").

Plaintiffs assert an argument in support of the proposition that the common law rules regarding conspiracy and aider and abettor liability applies to fraudulent transfers that they did not assert in support of the argument that the common law rule regarding officer liability applies to fraudulent transfers.  Plaintiffs assert that pursuant to Minn. Stat. § 513.50 the common law rules of conspiracy, and aider and abettor liability supplement the MFTA.  Section 513.50 reads as follows: "Unless displaced by the provisions of sections 513.41 to 513.51, the principles of

15

law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions."  Plaintiffs did not assert that the common law rule regarding officer liability supplements the MFTA under section 513.50; however, it would seem that if the common law rules of conspiracy and aider and abettor liability may be imported into the MFTA pursuant to section 513.50, then section 513.50 may also serve as the basis for importing the common law rule regarding officer liability.  Accordingly, this Court also certifies to the Minnesota Supreme Court the question of whether the common law rule holding officers liable for their own tortious conduct supplements the MFTA pursuant to section 513.50.

The Court hereby certifies the following question to the Minnesota Supreme Court: Whether an officer, director, or shareholder of a transferee or subsequent transferee, who personally participated in the fraudulent transfer, can be held personally liable under Minnesota common law or pursuant to section 513.50 of the MFTA?

### b.     Conspiracy and Aiding and Abetting Theories

The Court, in its previous Order, dismissed Plaintiffs' claim that Naegele Jr. was liable as a co-conspirator or aider and abettor of the alleged fraudulent transfer.  Order at 9-10.  The reasoning of courts outside Minnesota that declined to impose liability on non-transferees based on conspiracy and aiding and abetting theories was persuasive.  Id. at 9.  The Court further explained: "A review of the Minnesota UFTA reveals no provision expressly imposing liability for conspiracy to commit or aiding and abetting a violation of the UFTA."  Order at 10.  Because the plain language of the MFTA does not impose liability for conspiracy or aiding and abetting fraudulent transfer, and because it is uncertain whether fraudulent transfer is a tort, the Court

16

concluded that "Naegele Jr. can not be held personally liable for aiding and abetting or conspiring to commit a violation of the UFTA."  Id.

### i.    Conspiracy

Defendants assert that for the same reasons that the Court dismissed Plaintiffs' conspiracy claim against Naegele Jr, it should dismiss Plaintiffs' conspiracy claim against Naegele III and Battel.  Plaintiffs assert that under Minn. Stat. § 513.50, common law supplements the MFTA unless displaced by the MFTA, and that because Minnesota common law held individuals who conspired to commit a fraudulent conveyance liable, and because the MFTA "[n]o where [displaces] the law of conspiracy," Plaintiffs may assert a claim that Naegele III and Battel are liable as co-conspirators for the alleged fraudulent transfer.

The question then is whether Naegele III and Battel may be held liable as co-conspirators under section 513.50 or, should the Minnesota Supreme Court determine that fraudulent transfer is a tort, whether the common law rule by which individuals may be held liable for conspiring to commit tortious conduct applies to the MFTA.  This is a question that the Minnesota Supreme Court has not yet addressed and one for which courts outside Minnesota have reached different results.  Compare F.D.I.C. v. S. Prawer & Co., 829 F. Supp. 453, 455-456 (D. Maine 1993) (holding that because fraudulent transfer is not a tort, plaintiffs could not hold defendants liable for allegedly conspiring to commit fraudulent transfer); with Taylor v. S & M Lamp Co., 190 Cal. App. 2d 700, 706 ("[A] debtor and those who conspire with him to conceal his assets for the purpose of defrauding creditors are guilty of committing a tort and each is liable in damages."); see also Cortez v. Vogt, 52 Cal. App. 4th 917, 934 (citing Cal. Civ. Code § 3439.10, which is identical to Minn. Stat. § 513.50, as support for the proposition that the remedies of the Uniform

17

Fraudulent Conveyance Act carry over to the UFTA).  The question certified to the Minnesota

Supreme Court is: Whether a non-transferee may be held personally liable under Minnesota

common law or pursuant to section 513.50 of the MFTA for conspiring with others to commit a

fraudulent transfer?

**ii.     Aiding and Abetting**

Defendants rely on the Court's previous Order dismissing Plaintiffs' aiding and abetting

claim against Naegele Jr. in support of their position that the Court should dismiss Plaintiffs'

aiding and abetting claims against Naegele III and Battel.  Plaintiffs assert that they may hold

Naegele III and Battel personally liable for aiding and abetting fraudulent transfer because

Minnesota common law recognizes liability for aiding and abetting the commission of a tort,

because section 513.50 states that the common law supplements the MFTA where not displaced

by the MFTA, and because the MFTA does not displace aider and abettor liability.

Once again this presents an issue not addressed by the Minnesota Supreme Court or any

court within Minnesota.  Confronted with this question and the lack of any precedent from the

Florida Supreme Court, the Eleventh Circuit certified the following question to the Florida

Supreme Court: "Under Florida law, is there a cause of action for aiding and abetting a

fraudulent transfer when the alleged aider-abettor is not a transferee?"  Freeman v. First Union

Nat'l Bank, 329 F.3d 1231, 1234 (11th Cir. 2003).  The Florida Supreme Court looked to the text

of the Florida Uniform Fraudulent Transfers Act ("FUFTA") and the legislative intent behind the

act and concluded that the FUFTA did not create a cause of action for aiding and abetting

fraudulent transfer against a non-transferee.  Freeman v. First Union Nat'l Bank, 865 So.2d

1272, 1275-77 (Fla. 2004).  Although this Court believes that the reasoning of the Florida

18

Supreme Court is persuasive, attempting to determine whether the Minnesota Supreme Court would follow suit would require this Court to engage in speculation or conjecture, which the Eighth Circuit has cautioned against.  Accordingly, the Court certifies the following question to the Minnesota Supreme Court: Whether a non-transferee may be held personally liable under Minnesota common law or pursuant to section 513.50 of the MFTA for aiding and abetting a fraudulent transfer?

### c.      Person for Whose Benefit the Transfer was Made

Plaintiffs allege that Naegele III and Battel are personally liable for the alleged fraudulent transfer because Athletica made the transfer to benefit Naegele III and Battel.  Under the MFTA, a judgment may be entered against "the person for whose benefit the transfer was made," in addition to the first transferees and subsequent transferees. Minn. Stat. § 513.48(b)(1), (2).  The Court dismissed Plaintiffs' parallel claim against Naegele Jr. because Plaintiffs "never allege Naegele Jr. is the 'person for whose benefit the transfer was made,' and also have not specified what the benefit was or whether the benefit was received." Order at 10.

The Athletica Defendants assert that the Court should dismiss Plaintiffs' claim against Naegele III and Battel because they are not transferees and because Plaintiffs failed to allege that the transfer was to benefit Naegele III and Battel or that Naegele III and Battel received a benefit as a result of the transfer.  Plaintiffs contend that their Second Amended Complaint includes allegations that Athletica made the transfer to benefit Naegele III and Battel.  The paragraphs of the Second Amended Complaint that Plaintiffs cite assert the same vague allegations against Naegele III as it does against Naegele Jr. and no allegations against Battel.  See 2d Am. Compl.

19

¶¶ 61, 78.[2]  Plaintiffs' allegations were too vague to support a claim against Naegele Jr. and failed to allege that Naegele Jr. ever received any benefit.  Plaintiffs' allegations against Naegele III and Battel fail for the same reasons.  Accordingly, Plaintiffs' claim that Naegele III and Battel are personally liable because the transfer was made for their benefit is dismissed.

### 2.    Claims Against all of the Athletica Defendants

#### a.    Actual Fraud

The Athletica Defendants argue that the Court should dismiss Plaintiffs' fraudulent transfer claims because Plaintiffs failed to adequately plead fraud.  The Court found in its previous Order that the allegations in Plaintiffs' Second Amended Complaint satisfied the particularity requirements of Rule 9(b).  Despite this, the Athletica Defendants assert that the Court should dismiss Plaintiffs' claims of actual fraud because "Plaintiffs have [] not adequately pled a badge of fraud."  Defs.' Mem. in Supp. of Mot. to Dismiss at 18.  Plaintiffs assert that "Badges of Fraud are not a pleading requirement, courts use the Badges of Fraud to test the evidence at trial."  Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 32.

This Court has already concluded that Plaintiffs' Second Amended Complaint adequately pleads actual fraud and the Athletica Defendants cite no authority for the proposition that Rule 9(b)'s pleading standard requires that Plaintiffs do more than set forth the who, what, where, when, and how, of their fraud claim.  Whether the Badges of Fraud are present in this case is an issue better addressed at summary judgment.

---

[2]  Plaintiffs also cite paragraph 81, but paragraph 81 makes no allegation of a benefit.

20

### b.        Constructive Fraud—Antecedent Debt

In the Court's previous Order it dismissed claims five and six of Plaintiffs' Second Amended Complaint because Plaintiffs' made no allegations with respect to whether any of the transfers were made "to an insider for an antecedent debt" other than parroting the language of the statute.  Order at 17 (quoting Minn. Stat. § 513.45(b)).  The Athletica Defendants assert that the Court should dismiss Plaintiffs' claims of constructive fraud under Minn. Stat. § 513.45(b) against it for the same reasons that the Court dismissed those claims against the Non-Athletica Defendants.  Plaintiffs assert that the Court dismissed its claims against the Non-Athletica Defendants because it "misunderstood the analysis."  Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 35.

Plaintiffs fail to set forth any facts demonstrating a plausible claim that the transfers were made for an antecedent debt.  Accordingly, the Court also dismisses claims five and six against the Athletica Defendants.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.  The Athletica Defendants' Motion for Judgment on the Pleadings [Docket No. 79] is

**GRANTED IN PART AND DENIED IN PART**; and

2.  The Court intends to certify the following questions to the Minnesota Supreme Court:

(1) Whether an officer, director, or shareholder of a transferee or subsequent

transferee, who personally participated in the fraudulent transfer, can be held personally liable

under Minnesota common law or pursuant to section 513.50 of the MFTA?

(2) Whether a non-transferee may be held personally liable under Minnesota

common law or pursuant to section 513.50 of the MFTA for conspiring with others to commit a

fraudulent transfer?

(3) Whether a non-transferee may be held personally liable under Minnesota

common law or pursuant to section 513.50 of the MFTA for aiding and abetting a fraudulent

transfer?

If any party objects to the certification process, or the wording of the questions, they

should file a memorandum stating their positions by Friday, May 9, 2008.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 29, 2008.

22